## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-21202-BLOOM/Otazo-Reyes

YOLANDA RAMIREZ,

      Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINES,

      Defendant.

_____/

### OMNIBUS ORDER ON MOTIONS TO STRIKE AND
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon three separate motions:

(1) Defendant Carnival Corporation's Motion for Summary Judgment, ECF No. [43] ("Motion for Summary Judgment"); Plaintiff Yolanda Ramirez filed a Response in Opposition, ECF No. [60], to which Defendant filed a Reply, ECF No. [69].

(2) Plaintiff's Motion to Strike or Limit Testimony of Defendant's Expert, Dr. Tyler Kress ("Dr. Kress"), ECF No. [46] ("Plaintiff's Motion to Strike"); Defendant filed a Response in Opposition, ECF No. [50] to which Plaintiff filed a Reply, ECF No. [56].

(3) Defendant's Motion to Strike/*Daubert* Motion of Plaintiff's Expert, Dr. Mandeep Chahil ("Dr. Chahil"), ECF No. [40] ("Defendant's Motion to Strike"); Plaintiff filed a Response in Opposition, ECF No. [53], to which Defendant filed a Reply, ECF No. [64].

Case No. 22-cv-21202-BLOOM/Otazo-Reyes

The Court has considered the Motions, all opposing and supporting submissions,[1] the record, the relevant law, and is otherwise full advised. For the reasons that follow, Defendant's Motion for Summary Judgment is denied, Defendant's Motion to Strike is denied, and Plaintiff's Motion to Strike is granted in part and denied in part.

## I.    BACKGROUND

Plaintiff initiated this maritime personal injury action against Defendant on April 18, 2022. ECF No. [1] ("Complaint"). The Complaint alleges three claims: negligent failure to correct known dangerous conditions ("Count I"); negligent failure to warn ("Count II"); and negligent maintenance ("Count III"). *See generally id.*

On August 17, 2019, Plaintiff was a passenger aboard Defendant's vessel, *M/S Carnival Vista*. Plaintiff alleges that she "was descending the interior stairwell…when her shoe became caught in a raised nosing on the step, causing Plaintiff to trip and fall down the stairwell and causing significant injuries." ECF No. [1] ¶ 13.

In its Motion for Summary Judgment, Defendant seeks summary judgment on all three counts. Defendant argues that (1) no dangerous condition existed; (2) any allegedly dangerous condition was open and obvious; (3) Defendant had no actual or constructive knowledge of any allegedly dangerous condition; and (4) Plaintiff cannot establish that her accident on the ship proximately caused her injuries. *See generally* ECF No. [43]. Plaintiff takes the opposing positions and responds that (1) the anti-skip strip was a hazard; (2) there is substantial evidence that Defendant had actual or constructive notice of the dangerous condition; (3) there is evidence that Defendant negligently maintained the stairs; (4) the danger was not open and obvious to Plaintiff;

---

[1] In support of its Motion for Summary Judgment, Defendant filed a Statement of Material Facts, ECF No. [42] ("SMF"). Plaintiff filed a Response to Defendant's SMF ("RSMF") and Additional Facts in Opposition to Summary Judgment ("AMF"), ECF No. [59]. Defendant filed a Reply Statement of Material Facts ("RESMF") and Response to Plaintiff's Additional Facts ("RAMF"), ECF No. [68].

and (5) Plaintiff has disclosed admissible testimony that her fall caused her injuries. *See generally* ECF No. [60].

Defendant intends to call Dr. Tyler Kress ("Dr. Kress") as an expert witness in human factors and biomechanical engineering. In Plaintiff's Motion to Strike, she argues that Dr. Kress's opinions are unreliable and unhelpful. *See generally* ECF No. [46]. Plaintiff intends to call Dr. Mandeep Chahil ("Dr. Chahil"), her treating physician, as a hybrid witness. Defendant's Motion to Strike challenges the scope of Dr. Chahil's testimony and contends the disclosure provided by Plaintiff is sufficient. *See generally* ECF No. [40].

## II.   STATEMENT OF MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A.  Plaintiff's Fall

Plaintiff was a fare-paying passenger onboard Defendant's Carnival Vista vessel. SMF ¶ 1. Plaintiff testified that on August 17, 2019, at approximately 7:20 a.m. her sandal got stuck underneath the raised rubber portion of the nosing, or anti-skid strip, on Stairway 60, causing her fall. *Id.* ¶¶ 1, 4. Plaintiff had transited that section, between Decks 9 and 10, of Stairway 60 multiple times before her fall and had not noticed anything defective about the stairs. *Id.* ¶¶ 13-14. Immediately before her fall, Plaintiff was holding the center banister as she descended the stairs. *Id.* ¶ 7. She does not remember which step her sandal got stuck on. *Id.* ¶ 9. Her fall was not witnessed by anyone. *Id.* ¶ 11.

### B.  Stairway 60

The nosing of the steps on Stairway 60 is comprised of a rubber strip encased in a metal frame. AMF ¶ 16. The parties dispute whether the portion of the stairway on which Plaintiff slipped

was raised. *See* SMF ¶ 18; RSMF ¶ 18. Plaintiff did not go back to the area of her fall on Stairway 60. SMF ¶ 12. Approximately two and a half hours after Plaintiff's fall, photographs were taken of Stairway 60 by Defendant's security team. *Id*. ¶19; RSMF ¶ 19; AMF ¶ 10; RAMF ¶ 10. After Plaintiff's incident, her husband, Jesse Ramirez ("Mr. Ramirez"), took photographs of the subject stairs which Plaintiff asserts depict that the rubber strip of the nosing was raised, creating a tripping hazard. RSMF ¶ 18; ECF No. [59-1].

Defendant's hotel stewards are responsible for monitoring the stairs and conducting visual inspections throughout the day. SMF ¶ 29. If the visual inspection reveals that a repair is needed, the steward is responsible for notifying his or her supervisor who in turn creates a work order for the appropriate team to handle. *Id*. In the three years leading up to Plaintiff's fall there is no evidence of any work orders or maintenance or repair records for Stairway 60 between Decks 9 and 10. *Id*. ¶ 31. There were, however, two work orders during the three years prior to Plaintiff's incident for different stretches of Stairway 60. RSMF ¶ 31. A September 4, 2017, work order indicates that the slip grip metal between Decks 4 and 5 became detached and a May 17, 2019, work order indicates that repair was needed between Decks 10 and 11 where the rubber strip was peeling off. *Id*.

### C. Liability Expert

Dr. Kress inspected Stairway 60 on December 10, 2022. SMF ¶ 34. He also reviewed the photographs taken by Mr. Ramirez and opined that the defect depicted in the photographs is not an unreasonable vertical change in height and does not depict a condition such that a sandal can or would get underneath it. *Id*. ¶ 37. Dr. Kress was able to locate the depicted defect during his December 10, 2022 inspection on the fourth step down, approximately 26 inches left of the center banister. *Id*. ¶ 39. He opined that the photographs taken by Mr. Ramirez depict an alleged defect

that is not near where Plaintiff fell and is not related to her incident. *Id*. ¶ 41. Plaintiff did not disclose a liability expert in her case in chief. *Id*. ¶ 33.

### D. Plaintiff's Injury

Plaintiff alleges that her fall caused her to suffer a traumatic brain injury and injuries to her neck, back, body, and limbs. SMF ¶ 50. Carnival's shipboard Dr. Siddhartha Dowera determined that Plaintiff's pre-existing medical conditions did not contribute to the incident. AMF ¶ 13.

Plaintiff disclosed Dr. Mandeep Chahil, her treating neurologist as a hybrid medical expert before the expert disclosure deadline. SMF ¶ 52. Dr. Chahil opined that more likely than not Plaintiff's symptoms were the result of a traumatic brain injury. AMF ¶ 15.

### E. Prior Incidents

In response to Plaintiff's Interrogatory, Defendant disclosed twelve (12) instances where guests tripped and fell on interior stairways of *Vista* Class ships. AMF ¶ 18, RAMF ¶ 18. Two of the disclosed incidents occurred onboard the *Vista*. *See* AMF ¶¶ 19, 20. On November 6, 2016, Brittany Hutchinson was running down an interior staircase onboard the *Vista* when her shoe got caught on the metal strip, causing her to fall. AMF ¶ 19, RAMF ¶ 19. On July 23, 2017, Steven Mark Wiseman was ascending an interior staircase onboard the *Vista* when his sandal got stuck underneath the metal edge of the anti-skid strip, causing him to sustain a laceration. AMF ¶ 20, RAMF ¶ 20.

## III.   LEGAL STANDARD

### A. *Daubert* Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a

preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005) (quoting *Frazier*, 387 F.3d at 1258).

### B.  Expert Disclosures

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To properly disclose a retained expert, parties must disclose an expert's identity "accompanied by a written report." *Id*. at Rule 26(a)(2)(B). If the witness is not required to provide a written report, the party must disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions the witness is expected to testify to. *Id*. at Rule 26(a)(2)(C).

If a party violates Rules 26(a), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." *See id.* at Rule 37(c)(1). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the

availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted).

Ultimately, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 06-CV-496, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 06-CV-496, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) (citation omitted); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-CV-23074, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014) (noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements). Indeed, "[c]ourts have broad discretion to exclude untimely expert testimony—even when they are designated as 'supplemental' reports." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).

### C. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## IV.    DISCUSSION

### A.    Motions to Strike

The Court first addresses Plaintiff's Motion to Strike testimony of Defendant's Expert, Dr. Kress, and then proceeds to consider Defendant's Motion to Strike Plaintiff's Expert, Dr. Chahil.

### i.       Defendant's Expert, Dr. Tyler Kress

Plaintiff moves to strike or limit five opinions contained in the report published by Defendant's expert, Dr. Kress, contending that his opinions are unreliable and include unhelpful legal conclusions. The parties do not dispute Dr. Kress's qualifications and, following consideration of Dr. Kress's qualifications, the Court finds that Dr. Kress is qualified to opine on the matters contained in his report.

Plaintiff challenges the reliability and/or helpfulness of the following five opinions asserted by Dr. Kress:[2]

[1] . . . Carpet and nosing design that were on the subject stairway are known to perform very well from a slip resistance standpoint when tested and evaluated with typical tribometric measurement methods.

[2] . . . [Defendant's] choice to use the subject nosing design and carpet on the stairway flooring surface, and the available evidence with respect to its condition, is demonstrative of reasonable actions that provided an adequate and appropriate walking surface for this environment . . . I have not reviewed evidence that indicates neglect (on [Defendant's] part) as a result of actual or constructive notice of an unreasonable hazard that was the proximate cause of [Plaintiff's] fall and subsequent injuries; nor is there evidence to indicate that neglect (on [Defendant's] part) as a result of "lack or warning" was a cause of [Plaintiff's] incident. What [Defendant] had control over, they controlled properly and reasonably. . . I have not reviewed any convincing evidence that indicates to me that it was due to any unreasonable condition or a policy/procedure error related to [Defendant].

[3] . . . The biomechanical analysis of [Plaintiff's] fall reveals that she misstepped and/or slipped when she attempted to stepped [sic] downward onto the 6th step with her right foot. Her sandal did not get caught underneath the anti-skid rubber component or the metal component of the nose of the step . . . For reference, I have included as an attachment to this report, a sequence of selected video frames from the available CCTV security footage . . . The photos taken subsequent to the incident, my inspection, and the video and biomechanics of her fall are not consistent with her sandal becoming stuck or wedged as she claimed.

[4] . . . [Plaintiff] identified that it was her right foot on the 4th (or 5th) step down and she identified a small imperfection (herein referred to as spot) on the rubber anti-skid stripping where she claims she thinks her foot got caught underneath. Again, this did not happen. The spot she identified was on the 4th step down and was approximately 26 inches left of the center bannister. Her right foot misstepped/slipped when she attempted to place it on the 6th step down and it was approximately 10 to 12 inches from the center bannister.

[5] … There's no evidence to indicate that there were any applicable standards of care (albeit governmental, OSHA, ANSI, ASTM, European, maritime-based, or voluntary) that were violated with respect to an engineering/safety judgment regarding reasonableness and with respect to [Plaintiff's] accident.

---

[2] For the sake of clarity, the Court labels the opinions at issue as one through five and addresses them chronologically.

ECF No. [46-1] at 5-7. The Court first addresses Plaintiff's challenges to Dr. Kress's methodology and then proceeds to analyze the helpfulness of his challenged opinions.

### a. Methodology

Plaintiff argues that Dr. Kress's above opinions are unreliable and lack an appropriate methodology. Dr. Kress notes in his report that he relied upon substantial evidence and materials to make his findings, including the CCTV video footage of Plaintiff's fall, photos of the subject stairs, field notes taken while inspecting the vessel, Plaintiff's deposition testimony, other case-specific materials, and his past education and experience in biomechanics and with slip-trip-and-fall incidents. ECF No. [46-1] at 3.

### (1) Opinion One

First, Plaintiff challenges the admissibility of Dr. Kress's opinion that the carpet and nosing design of the subject stairs "perform well from a slip resistance standpoint." ECF No. [46] at 5. Plaintiff contends that Dr. Kress provides "no quantitative or analytical support" for this assertion, and cites *Jordan v. Celebrity Cruises, Inc.* for the proposition that an expert opinion must be "sufficiently supported by facts, data, and scientific principles." *Id.* at 4-6 (citing *Jordan*, No. 17-20773, 2018 WL 3584702 at *7 (S.D. Fla. July 25, 2018) (excluding an expert witness on reliability grounds because the court could find "no case…where [the method at issue] or anything remotely close to it has been recognized as a reliable scientific methodology")). However, *Jordan* is easily distinguished from the facts here. The expert in *Jordan* was excluded not only on reliability grounds, but also for lack of qualification. *See* 2018 WL 3584702 at *5-6 (S.D. Fla. July 25, 2018). With no qualifications in the field at issue, that expert was unable to render reliable testimony based on personal knowledge and experience. *Id.* Here, by contrast, Plaintiff has not

challenged Dr. Kress's qualifications, and the Court finds he is qualified to offer the opinions contained in his report.

An expert can rely on his personal knowledge and experience to testify. *See Whealan v. Royal Caribbean Cruises, Ltd.*, 976 F. Supp. 2d 1328, 1330 (S.D. Fla. 2013) (citing *Frazier*, 387 F.3d at 1261). "Federal Rule of Evidence 703 allows an expert to base an opinion 'on facts or data in the case that the expert has been made aware of or personally observed.'" *Conway v. Celebrity Cruises*, No. 19-24470, 2021 WL 6274790 at *3 (S.D. Fla. Oct. 6, 2021) (citing Fed. R. Evid. 703).

Dr. Kress is a human factors expert who has previously performed tribometric testing on cruise ships. *See* ECF No. [46-1] at 2-3. Furthermore, he personally examined the nosing and carpet at issue in this case. *See id*. at 3. Dr. Kress did not perform tribometric testing in this case, and does not assert that he did. Rather, he references a recognized methodology for slip-resistant testing, commonly utilized by experts in his field, and opined that "[c]arpet and nosing design that were on the subject stairway are known to perform very well from a slip resistance standpoint." ECF No. [46-1] at 5. The Court finds that Plaintiff's challenge – that Dr. Kress did not perform testing on this particular staircase – goes to the weight rather than the admissibility of the opinion and is therefore not subject to exclusion, but best addressed on cross examination.

### (2) Opinion Two

The second opinion Plaintiff argues should be excluded is that Defendant's construction choices for the subject stairway were reasonable, and that he had not reviewed evidence of conditions requiring notice or indicating neglect. Plaintiff contends that Dr. Kress does not specify what evidence he relied upon to make those conclusions and therefore the opinion does not meet the standard for admissibility. Defendant responds that Dr. Kress indicated that he relied on sufficient evidence to render his opinion on the conditions of the stairs reliable. Dr. Kress

investigated the site of the accident, "carefully examined the design of the nosing and the alleged area of the rubber component," took pictures and field notes, and ultimately opined that "[Carnival's] choice to use the subject nosing design and carpet on the stairway flooring surface, and the available evidence with respect to its condition, is demonstrative of reasonable actions that provided an adequate and appropriate walking surface for this environment." ECF No. [46-1] at 5. Plaintiff does not point to what specific additional evidence Dr. Kress should have considered before his opinion may be deemed reliable. Further, Plaintiff has not challenged Dr. Kress's qualifications as a human factors engineer, an area of expertise within which this type of analysis squarely falls. *See Hall v. Carnival Corp.*, No. 21-CV-20557, 2022 WL 990625, at *11 (S.D. Fla. Apr. 01, 2022).

More problematic within Dr. Kress's second opinion is his assertion that there was not "neglect . . . *as a result of actual or constructive notice of an unreasonable hazard that was the proximate cause* of Mrs. Ramirez's fall." ECF No. [46-1] at 5-6 (emphasis added). While an expert witness may testify as to his opinion on an ultimate issue of fact, he "may not testify as to his opinion regarding ultimate legal conclusions." *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014); *Carr v. Carnival Corp.*, 21-CV-20113, 2022 WL 2869732, at *4 (S.D. Fla. July 21, 2022) (holding that the expert in that case was "precluded from testifying that Defendant 'should have been aware' or 'had prior knowledge' of the dangerous condition," but allowing him to "opine as to whether Defendant violated industry standards on slip resistance, which are not legal conclusions"). While Dr. Kress may testify as to his underlying methodology, industry standards, and the facts as they stand, he cannot testify as to the legal conclusions of whether there was "neglect," "actual or constructive notice," or whether the surface was "reasonable" *per se*.

### (3) Opinion Three

The third opinion that Plaintiff contends is not sufficiently reliable is Dr. Kress's assertion that Ramirez's sandal "did not get caught underneath the anti-skid rubber component or the metal component of the nose of the step," and that "she slipped and did not trip." ECF No. [46-1] at 6; *see also* ECF No. [46] at 6. Again, Plaintiff argues that Dr. Kress did not support his opinions with reliable methodology or "any explanation of what the evidence might be, or what photographic, physical, biomechanical or geometric analysis might support his assertions." ECF No. [46] at 6. In his Report, however, Dr. Kress references the evidence on which he relied. He includes highlights of Plaintiff's deposition, including her testimony that she "just totally fell back." ECF No. [46-1] at 12. In his analysis, Dr. Kress breaks down the CCTV footage of Plaintiff's fall and concludes that "[t]he biomechanics of such an event (as she claims) would involve a disruption of the forward motion of her foot/lower extremity consistent with a tripping mechanism and her forward momentum would lend itself to her upper body components falling forward." ECF No. [46-1] at 6.

In *Demeritt v. Wal-Mart Stores E., LP,* another slip-and-fall case, the court found an expert's methodology reliable where the report "connects scientific principles (*i.e.*, fall kinematics, biomechanics, and gait analysis) to the factual record (*i.e.*, Plaintiff's testimony, photographs, and medical records)" and then "reconstructs a beat-by-beat timeline of Plaintiff's fall." No. 20-CV-89, 2021 WL 2828686, at *2 (M.D. Fla. May 17, 2021) (internal citations omitted). This case is analogous to *Demeritt* because, like the expert in *Demeritt*, Dr. Kress relates scientific theories (biomechanics and fall kinematics, though not titled as such) to the factual record (Plaintiff's testimony, photographs, medical records, and video footage). The Court therefore agrees with Defendant that Dr. Kress used adequate methodology.

#### (4) Opinion Four

Plaintiff also objects to Dr. Kress's fourth opinion that Plaintiff fell on the sixth step down the staircase, approximately 10 to 12 inches from the center banister, rather than on the fourth or fifth step, approximately 26 inches from the center banister. *See* ECF Nos. [46] at 7, [46-1] at 7. Plaintiff argues that Dr. Kress used insufficient data and unreliable methodology. Plaintiff again appears to rely on *Jordan v. Celebrity Cruises, Inc*. *See* ECF No. [46]. As with Dr. Kress's first opinion, *Jordan* is distinguishable because Dr. Kress's qualifications are not being challenged whereas, in *Jordan,* the expert was deemed unqualified and therefore could not use his experience and knowledge of the field to produce reliable methods of analysis. *See* 2018 WL 3584702 at *5-6. Dr. Kress used photographs, measurements, video analysis, and Plaintiff's own testimony to make his determinations. *See* ECF No. [46-1] at 3. Plaintiff does not suggest a more reliable methodology or what further data is necessary. That Plaintiff does not agree with Dr. Kress's conclusion is an insufficient basis to exclude his testimony. Accordingly, Dr. Kress's fourth opinion is not stricken.

#### (5) Opinion Five

Finally, while Plaintiff asserts that Dr. Kress has not adequately explained his fifth opinion that there was no evidence showing any violation of any standards of care, Plaintiff does not provide any authority to support the proposition that such explanation is required. *See* ECF No. [46]. If Plaintiff believes that any applicable standards have been violated, that would be appropriate fodder for cross-examination.

#### b. Helpfulness

Plaintiff further argues that Dr. Kress's opinions are unhelpful. *See* ECF No. [46]. Plaintiff cites *Umana-Fowler v. NCL (Bahamas) Ltd.* for the proposition that experts cannot give testimony

that "offers nothing more than what lawyers for the parties can argue in closing arguments." 49 F.
Supp. 3d 1120, 1122 (S.D. Fla. 2014). In *Umana-Fowler* the court specifically noted in its
exclusion of the expert witness on helpfulness grounds that the expert did not conduct a site
inspection or review relevant training and safety policies, and in general was attempting to testify
to crowd control measures when the incident at issue did not involve a crowd. *See id.* at 1123-24.
By contrast, Dr. Kress's testimony will assist the trier of fact to the extent his analysis remains
within his expertise and does not verge into legal conclusions or observations that any lay person
could make. *See, e.g., Birren v. Royal Caribbean Cruises*, No. 20-CV-22783, 2022 WL 446207,
at *5 (S.D. Fla. Feb. 14, 2022) (allowing an expert to testify to opinions that include a consideration
of CCTV footage alongside an analysis of kinetic energy and a review of relevant codes but
restricting any testimony that "merely provides an overview of the CCTV footage itself"). Because
the challenged opinions are based on reliable methodology and will aid the jury in its fact-finding,
the opinions are admissible.

### ii.  Plaintiff's Expert, Dr. Mandeep Chahil

The parties dispute whether Dr. Chahil is an expert for whom a full report was required
under Rule 26(a)(2)(B). Plaintiff listed Dr. Chahil, as a hybrid expert and who intends to testify as
to causation, the necessity of care and treatment of Plaintiff's injury, and/or the reasonableness,
relatedness, and customary nature of the charges. Defendants argue in the alternative that
Plaintiff's disclosures fail to comply with the less demanding requirements of Rule 26(a)(2)(C).

This Court previously found in *Torres v. First Transit Inc.*, that when a treating physician
testifies regarding the opinions he formed during the course of treatment, the treating physician
does not need to produce a Rule 26(a)(2)(B) report. 2018 WL 3729553, at *2. "Treating physicians
commonly consider the cause of any medical condition presented in a patient, the diagnosis, the
prognosis, and the extent of disability, if any, caused by the condition or injury." *Jones v. Royal*

*Caribbean Cruises, Ltd.*, No. 12-CV-20322, 2013 WL 8695361, at *5 (S.D. Fla. Apr. 4, 2013) (quoting *Levine v. Wyeth, Inc.*, 2010 WL 2612579, No. 09–CV–854, at *1 (M.D. Fla. June 25, 2010)). "[B]ecause a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient." *Levine*, 2010 WL 2612579 at *1.

However, a treating physician offering opinions beyond those arising from treatment and who is retained or employed for the purposes of reaching and offering such opinions, is considered an expert from whom a full Rule 26(a)(2)(B) report is required, unless the failure to disclose is substantially justified or harmless. *See Torres v. First Transit Inc.*, 2018 WL 3729553, at *2. The Court in *Torres v. First Transit Inc.*, considered four factors when considering whether the failure to disclose was substantially justified or harmless: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *See id.* (quoting *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-CV-60351, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010)).

On January 24, 2023, Plaintiff made a "hybrid witness disclosure," listing Dr. Chahil as a treating physician who will testify at trial. *See* ECF No. [40-1]. Pursuant to the Court's Scheduling Order, the discovery period thereafter closed on February 10, 2023. ECF No. [37]. The first time Defendant raised questions or concerns regarding the sufficiency, or lack thereof, of Plaintiff's expert witness disclosure was on February 14, 2023, when it filed the instant Motion to Strike Dr. Chahil, ECF No. [40].

Defendant argues that Plaintiff's disclosure is deficient under Rule 26(a)(2)(C) for multiple reasons. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii) (requiring a "summary of the facts and opinions to

Case No. 22-cv-21202-BLOOM/Otazo-Reyes

which the witness is expected to testify"). Defendant asserts that the disclosure gives "no specific opinions" on the "long term/permanent effects" of Plaintiff's injury and states only a general description of topics such as "the reasonableness and necessity of [Dr. Chahil's] services and the charges . . . and the reasonableness and necessity of future healthcare and palliative treatments or continuing treatment, procedures, medicines and services and the reasonable cost for those prospective services." ECF No. [40] at 6-7 (quoting ECF No. [40-1] at 2).

The Court finds that *portions* of Plaintiff's disclosure in this case, specifically those involving past and future medical treatment and injuries, are adequate for purposes of Rule 26(a)(2)(C). In support of its position that the disclosure was insufficient, Defendant cites *Chau v. NCL (Bahamas), Ltd.*, No. 16-CV-21115, 2017 WL 3623562 (S.D. Fla. May 3, 2017). The *Chau* court considered the sufficiency of a disclosure that read, in relevant part:

> [The physician's] opinions will include a detailed explanation of the nature and extent of injuries Plaintiff sustained in this case, including Plaintiff's current medical symptoms, past and future medical symptoms, past and future medical care and treatment, permanent nature, disability, impairment, and injury causation as a result of the injuries Plaintiff sustained in this case. [The physician] will also offer opinions as to the reasonableness of the costs and necessity of the medical care and treatment that was performed on the Plaintiff and future medical care and treatment that is necessary.

*Id.* at *5 n.3. That court held that the disclosure was insufficient for Rule 26(a)(2)(C) purposes. *Id.* at *5.

Here, in contrast, the disclosure for Dr. Chahil contains specific details regarding both past and future symptoms and treatment. *See generally* ECF No. [40-1]. Those include, for example, Plaintiff's diagnosis with nine listed conditions and the statement that "Dr. Chahil will testify that . . . Plaintiff will require the following future treatment (i) one neuropsychological consultation; (ii) one vestibular evaluation; (iii) 18 vestibular rehabilitation sessions; and (iv) one

18

Videonystagmography." ECF No. [40-1] at 1-2. The Court finds that portion of the disclosure is adequate for purposes of Rule 26(a)(2)(C).

Nevertheless, here, as in *Chau*, the disclosure is insufficient regarding the reasonable cost of prospective future services. *See Chau*, 2017 WL 3623562, at *5, 5 n.3; *see also Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1298-99 (S.D. Fla. 2021) (holding that the plaintiff's disclosure did not comply with Rule 26(a)(2)(C) where the disclosure stated that the doctor would testify as to "the need and estimated cost of future medical care and treatment and prescription medications, therapy and other related medical needs"). The Court therefore proceeds to consider each of the four relevant factors to determine whether the failure to adequately disclose was substantially justified or harmless.

First, the Eleventh Circuit has held that "[w]hen the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017). The Court therefore finds that the first factor, the importance of the excluded testimony, weighs against exclusion of Plaintiff's expert.

Regarding the second factor, Plaintiff argues that her hybrid witness disclosure is sufficient per the Rule 26(a)(2)(C) requirements. Plaintiff asserts that "[t]he content of Dr. Chahil's testimony will not be a surprise to [Defendant], not only because [Defendant] has all of the relevant medical records from which Dr. Chahil will testify, but also because his anticipated opinions are explained in Plaintiff's disclosure and are within the scope of routine and expected treating physician testimony." ECF No. [53] at 4. While this Court has already determined that the disclosure is partially inadequate, there is no evidence that that Plaintiff's failure to provide a full

disclosure was due to malice or "purposeful strategy to deceive." *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d at 1299.

For the third factor, "[p]rejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted). Plaintiff timely provided Defendant with Dr. Chahil's name and a summary of the topics on which he will offer testimony. Defendant argues that it will be prejudiced because it will be unable to prepare fully for trial and there will be a measure of surprise as to the content Dr. Chahil's testimony. *See* ECF No. [40] at 8. However, Defendant had the opportunity to seek the intervention of the Court for Plaintiff's non-compliance before the discovery cut-off and failed to do so. Similarly, as Plaintiff argues, Defendant had an opportunity to depose any of Plaintiff's disclosed witnesses before the discovery deadline, but "chose not to do so." ECF No. [53] at 5. Furthermore, as both parties acknowledge, Defendant made no attempts either before or after the filing deadline to confer with Plaintiff regarding the alleged deficiencies. *See Id*. at 1-2; ECF No. [64] at 8. The Court therefore finds that Defendant's claim of prejudice is unconvincing. *See Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d at 1300 ("Since [Wal-Mart] could have done much more—much earlier—to resolve the summary's deficiencies, its claimed prejudice rings hollow now").

Fourth and finally, the Court is not inclined to grant a continuance or reopen discovery with trial scheduled to begin in less than one month.

Having considered the relevant factors, the Court will not preclude the testimony of Dr. Chahil because the deficiencies in Plaintiff's disclosure were harmless and could have been timely rectified had Defendant sought relief sooner. However, as this Court stated in *Torres v. First*

*Transit Inc.*, those treating physicians who cannot be deemed an expert witness and can only be deemed a fact witness "must be precluded from testifying regarding causation issues if that testimony is not 'sufficiently related' to the information disclosed during the course of Plaintiff's treatment . . .." 2018 WL 3729553, at *3 (internal quotation marks and citation omitted).

The record does not make clear what opinion Dr. Chahil will offer regarding the cost of future treatment and whether that opinion, or his other disclosed opinions, were formed during his treatment of Plaintiff.[3] The Court therefore cannot determine whether the challenged opinions were formed during and based upon observations made in the course of treatment. Accordingly, the Court cannot definitively state that Dr. Chahil's opinions are subject to a *Daubert* challenge. *See Wilson v. Taser Intern., Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008) ("Although we agree that a treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, once the treating physician expresses an *opinion* unrelated to treatment which is based on scientific, technical, or other specialized knowledge, that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by *Daubert*." (internal quotation marks omitted) (emphasis in original)).

To the extent Defendant challenges Dr. Chahil's opinions under *Daubert,* the Court will assess the foundation laid for Dr. Chahil's opinions at trial. At this juncture, the Court relies only on the expert disclosure which says that "Dr. Chahil's opinions are based upon his own medical treatment of Plaintiff and his personal knowledge, education, training, and experience in the field of neurology" and that he is expected to testify to his opinions "within reasonable medical probability." ECF No. [40-1] at 1-2. As such, the Court reserves ruling on the admissibility of Dr.

---

[3] Defendant argues that "[b]ecause Plaintiff's claim that she was injured during her shipboard fall was not 'a critical part of diagnosing her injuries,' such testimony constitutes expert causation testimony." ECF No. [40] at 4 (quoting *Chau*, 2017 WL 3623562, at *7). Plaintiff responds that "[c]ertainly information about how Plaintiff sustained the injury is critical to Dr. Chahil's diagnosis and treatment." ECF No. [53] at 5.

Chahil's opinions until the trial. *In re Seroquel Products Liab. Litig.*, Nos. 06- MD-1769, 07-CV-15733 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009) (deferring ruling so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context).

### B.    Motion for Summary Judgment

Defendant moves for summary judgment on all three counts alleged by Plaintiff. As stated above, Defendant argues that it is entitled to summary judgment because (1) no dangerous condition existed; (2) any allegedly dangerous condition was open and obvious; (3) Defendant had no actual or constructive knowledge of any allegedly dangerous condition; and (4) Plaintiff cannot establish that her accident on the ship proximately caused her injuries. *See generally* ECF No. [43]. Plaintiff takes the opposing positions and responds that (1) the anti-skip strip was a hazard; (2) there is substantial evidence that Defendant had actual or constructive notice of the dangerous condition; (3) there is evidence that Defendant negligently maintained the stairs; (4) the danger was not open and obvious to Plaintiff; and (5) Plaintiff has disclosed admissible testimony that her fall caused her injuries. *See generally* ECF No. [60]. The Court proceeds to analyze the parties' arguments in the order raised by Defendant.

### i.    Maritime Law Principles

As an initial matter, the parties agree that this case is governed by maritime law. "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara*, 920 F.3d 710, 720 (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately

caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "The mere fact that an accident occurs does

not give rise to a presumption that the setting of the accident constituted a dangerous condition."

*Miller*, 2016 WL 4809347, at \*4. Moreover,

> [t]o establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at \*4 (S.D. Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

### ii.    Dangerous Condition

Defendant argues that it did not breach any duty to Plaintiff because the anti-skid stripping on the stairs was not hazardous. Plaintiff responds that the rubber strip of the anti-skid nosing was raised, creating a tripping hazard.

Defendant cites this Court's previous decision in *Price v. Carnival Cruise Lines*, in support of its position that there was no hazardous condition. No. 20-CV-20621, 2022 WL 2713727, at \*7 (S.D. Fla. July 13, 2022). In that case, the Court stated that "courts have granted summary judgment in favor of defendants when plaintiffs have failed to present any expert testimony that there was a violation of safety standards or a product defect that created a dangerous condition." *Id*. (citing *McClanahan v. NCL (Bahamas) Ltd.*, 281 F. Supp. 3d 1350, 1354 (S.D. Fla. 2017); *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 WL 6581606, at \*5 (S.D. Fla. Nov. 10, 2020)).

Defendant argues that this case is analogous to *McClanahan* and *Penick v. Harbor Freight Tools, USA, Inc.*, in which summary judgment was granted in part due to lack of expert testimony presented by Plaintiff to establish a defect. *McClanahan*, 281 F. Supp. 3d at 1354; *Penick*, 2020 WL 6581606, at \*5-6. The *McClanahan* court noted that the plaintiff had "no expert testimony that the step pattern violates any safety standards" and that because the plaintiff's expert was

excluded for failure to comply with *Daubert*, plaintiff could not rely on that expert's "testimony to establish any of the[] alleged causes of her fall constitute[] a dangerous condition." *McClanahan*, 281 F. Supp. 3d 1354. That court ultimately concluded that the Defendant was entitled to judgment as a matter of law because the court had rejected all three of plaintiff's alleged dangerous conditions that formed the basis of her negligence claim. *Id*. In *Penick*, this Court, in considering a motion for summary judgment in a products liability case, held that "[p]laintiff not only fails to present expert testimony to establish a defect, [p]laintiff fails to produce evidence casting doubt on any of the expert's opinions." *Penick*, 2020 WL 6581606, at *6 (cleaned up). The Court therefore found no genuine dispute that the product at issue was not defective and granted summary judgment on the negligence and strict liability claims. *Id*.

Plaintiff does not respond to or otherwise attempt to distinguish these cases. The Court however finds the instant case distinguishable. The undisputed facts in this case reveal that the nosing of the steps on Stairway 60 is comprised of a rubber strip encased in a metal frame. AMF ¶ 16. Photographs were taken of Stairway 60 between Decks 9 and 10, where Plaintiff allegedly fell, by Defendant's security team. SMF ¶ 19. The photographs do not depict any raised nosing or other defect, but it is disputed whether those photographs were taken at angles where the raised rubber strip of the nosing could not be detected. SMF ¶ 20; AMF ¶ 11. Plaintiff's husband also took photographs of the subject stairs which Plaintiff asserts depict that the rubber strip of the nosing was raised, creating a tripping hazard. RSMF ¶ 18; ECF No. [59-1]. Although it is undisputed that Defendant's hotel stewards monitor Stairway 60 on a continuous basis throughout the day, it is disputed whether the condition depicted in the photo taken by Mr. Ramirez was missed by the stewards. *See* SMF ¶ 29; RSMF ¶ 29.

Dr. Kress reviewed the photographs taken by Mr. Ramirez and opined that the defect depicted in the photographs is not an unreasonable vertical change in height and does not depict a condition such that a sandal can or would get underneath it. *Id*. ¶ 37. Dr. Kress was able to locate the depicted defect during his December 10, 2022 inspection of the ship, on the fourth step down, approximately 26 inches left of the center banister. *Id*. ¶¶ 34, 39. He opined that the photographs taken by Mr. Ramirez depict an alleged defect that is not near where Plaintiff fell and is not related to her incident. *Id*. ¶ 41. Plaintiff did not disclose a liability expert in her case in chief. *Id*. ¶ 33.

The Eleventh Circuit has held that a plaintiff "did not need to submit her own expert testimony to rebut Dr. Kress's declaration, but still had to produce <u>some</u> evidence of the alleged [dangerous condition] that caused her injury." *Adams v. Paradise Cruise Line Operator Ltd.*, 847 F. App'x 556, 560 (11th Cir. 2021) (emphasis in original). Here, Plaintiff has submitted photographs depicting the elevated portion of the rubber strip of the nosing she contends constituted a dangerous condition that caused her injury. *See* ECF No. [59-1]. Defendant has provided an expert who will testify that the defect depicted in those photographs is not an unreasonable change in height, and his review of the CCTV video and inspection confirm that the purported defect did not actually cause Plaintiff's fall. However, the trier of fact may consider his testimony, but it is ultimately a question of fact for the jury to decide. As Plaintiff has provided *some* evidence of the dangerous condition that she contends caused her injury, a genuine dispute of material fact exists and one to be presented to a jury.

### iii.    Open and Obvious

Defendant next argues that even if "the anti-skid strip on the stairs posed some risk, [Defendant] is nevertheless entitled to summary judgment because the ant-skid [sic] stripping, or nosing, on the stairs was open and obvious." ECF No. [43] at 12. Plaintiff responds that "the defect in the anti-skip rubber strip which caused Plaintiff's incident, was not detectable to an ordinary

passenger routinely descending the stairs, whose view would reasonably be focused forward rather than downward." ECF No. [60] at 7. She contends that a finding of obviousness depends on whether the danger of the condition was open and obvious, not just whether the condition's presence was open and obvious as assessed under an objective standard. Plaintiff also argues that even if the dangerousness of a condition may be obvious, it does not obviate Defendant's duty to maintain the vessel and subject stairs with reasonable care.

"An operator of a cruise ship has a duty to warn only of known *dangers* that are not open and obvious." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) (emphasis added) (internal quotation marks and citation omitted). "In deciding whether a dangerous condition is open and obvious, the Court must determine 'whether a reasonable person would have observed the condition and appreciated the nature of the condition.'" *Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1256 (S.D. Fla. 2020) (quoting *Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018)).

The record evidence establishes that the area where Plaintiff allegedly slipped is an area that she transited up and down a lot from the time she got onto the boat until she left. *See* ECF No. [41-1] at 33:21-25.[4] Plaintiff confirmed that she traveled between the ninth and tenth floor using Stairway 60 every time she wanted to eat, shop, go to the pool, or explore the ship. *Id.* at 34:1-4. When asked whether she noticed anything wrong or defective about any of the stairs before August 17, 2019, Plaintiff testified that she does not look at the stairs when walking up or down them. *Id.* at 34:6-12. Plaintiff testified that when she fell on Stairway 60 "you know, again, I wasn't, you know, paying attention with the strips or anything." *Id.* at 35:19-20.

---

[4] Plaintiff's deposition was filed as ECF No. [41-1]. Each page of the PDF contains four pages of deposition transcript. The Court cites to the page of the deposition transcript and corresponding line numbers rather than the page of the PDF.

Plaintiff argues that "an ordinary passenger would have no reason to expect any problem with the stairs." ECF No. [60] at 9. There are disputed issues of material fact regarding whether the anti-skid rubber strip was an open and obvious danger and summary judgment is not appropriate.

### iv.     Notice of Dangerous Condition

Defendant argues that it is entitled to summary judgment because it did not have actual or constructive notice of the allegedly dangerous condition on Stairway 60. Plaintiff responds that there is substantial evidence that Defendant had actual or constructive notice of the dangerous condition.

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.P.A.*, No. 08-CV-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d at 661-62)).

First, with regard to actual notice, Defendant contends that there is no evidence that it had actual notice. Although Plaintiff argues there is substantial evidence that Defendant had actual or constructive notice of the dangerous condition, she supplies evidence and provides argument only regarding constructive knowledge. The Court therefore finds that there is no evidence of actual notice and turns to the question of constructive notice.

As to constructive notice, Defendant argues that Plaintiff cannot establish that there were any prior incidents substantially similar to her own, or that Defendant had any knowledge of any defects, issues, or problems with the anti-skid stripping on Stairway 60 between Decks 9 and 10. Plaintiff responds that two prior similar falls on the *Vista* and four similar falls on Defendant's sister class ship, the *Horizon*, involve falls in interior stairs with shoes catching on nosing or anti-skid strips and are sufficient to place Defendant on constructive notice.

"[E]vidence of similar accidents might be relevant to defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Jones*, 861 F.2d at 661 (quoting *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338 (5th Cir. 1980)). In order to be admissible, "conditions substantially similar to the occurrence in question must have caused the prior accident," and "the prior accident must not have occurred too remote in time." *Id*. at 662-63 (citations omitted). Overall, "[d]etermining the remoteness of evidence is within the trial judge's discretion." *Id*. at 663 (citation omitted).

The Declaration of Defendant's corporate representative, Suzanne B. Vazques, establishes that "[t]he 'nosing' that Plaintiff alleges was raised and caused her incident, is actually an anti-skid strip that is present on all steps of [Stairway 60], as well as throughout the ship." ECF No. [42-2] ¶ 11. The Court therefore considers both incidents aboard the *Vista* which Plaintiff contends should have placed Defendant on constructive notice of the dangerous condition.

Defendant's Supplemental Responses to Interrogatories establish that on November 6, 2016, a guest running down the stairs from Deck 5 to Deck 4 "caught her shoe on the metal strip delineating the edge of the treat [sic] about three steps down on the first flight." ECF No. [41-2] at 10-11. That guest, Brittany Hutchinson, "stated she fell and rolled and landed on the landing with

right ankle pain." *Id*. On July 23, 2017, another guest, Steven Mark Wiseman, "claimed that while he was ascending the stairs (wearing flip flips [sic]) from Deck 2 to 3, he accidentally got stuck on the metal edge of anti-skid strip of an unknown step and received a laceration." *Id*. at 11-12. The Supplemental Responses to Interrogatories indicate that no changes, subsequent remedial measures, or other corrective actions were taken as a result of either incident. *Id*. at 10-12.

Defendant argues that those prior incidents which involve the metal portion rather than the rubber portion of the nosing are not similar enough to create a genuine dispute of material fact regarding whether the Defendant should have foreseen the circumstances leading to Plaintiff's fall. But the Eleventh Circuit has held that "the 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels*, 796 F.3d at 1287. Here, the two examples of the two incidents on stairways that Defendant's corporate representative's testimony establishes were substantially similar, involved substantially similar dangerous conditions, a portion of the anti-skid strip. In Brittany Hutchinson's case, the dangerous condition resulted in a fall, like Plaintiff alleges here. The Court finds that Plaintiff has set forth a substantially similar incident, creating a genuine dispute of material fact regarding whether Defendant was on constructive notice of the dangerous condition caused by the nosing and rubber skid-strips on its stairways. *See Cogburn v. Carnival Corp.*, No. 21-CV-11579, 2022 WL 1215196, at *5 (11th Cir. Apr. 25, 2022) ("Because [plaintiff] came forward with evidence of a substantially similar prior incident, we conclude that she established that [defendant] had notice of the risk-creating condition").

### v.    Negligent Maintenance or Inadequate Crew

Defendant asserts that "there is no record evidence that [it] failed to maintain the anti-skid stripping or the surrounding staircase." ECF No. [43] at 17. Plaintiff responds that "it is evident that [Defendant] failed to properly maintain the subject stairs. ECF No. [60] at 7.

"It is well-settled that, as a prerequisite to imposing liability on a negligent maintenance claim, a cruise ship operator must be on notice of the allegedly dangerous condition." *Francis v. MSC Cruises, S.A.*, 546 F. Supp. 3d 1258 (S.D. Fla. 2021), *aff'd,* No. 21-CV-12513, 2022 WL 4393188 (11th Cir. Sept. 23, 2022).

The undisputed evidence establishes that hotel stewards monitor the stairs on a continuous basis throughout the day. SMF ¶ 29. If any member of the team notices an item in need of repair or maintenance, the team member is responsible for notifying their supervisor, who in turn, would create a work order for the appropriate team to handle. *Id*. However, Plaintiff asserts that Defendant failed to abide by its policy and its crewmembers failed to report the defect in the rubber strip of the nosing even though it should have been detected and reported before Plaintiff fell. RSMF ¶ 29. To support its position, Plaintiff submits that Defendant's expert, Dr. Kress, observed the dangerous condition to still be in existence when he performed an inspection of the vessel on December 10, 2022, more than three years after her fall. *See* ECF No. [46-1] at 3.

Because the Court has already determined that there is a genuine dispute as to constructive notice, it finds there is also a genuine dispute regarding whether Defendant was negligent in maintaining Stairway 60 between Decks 9 and 10.

### vi.   Causation

Defendant argues that summary judgment should be granted "on the separate and distinct ground that Plaintiff has not offered any admissible medical expert testimony that the shipboard fall caused her injuries." ECF No. [43] at 18. Plaintiff responds that "she reported the fall to the ship's medical center immediately after it occurred, so there is no real doubt that her fall caused her acute injury." ECF No. [60] at 10. Plaintiff further asserts that "there is no doubt that her fall caused her acute injury and Plaintiff has disclosed admissible testimony that the fall caused her injuries[.]" *Id*. at 11.

As discussed in section IV(A)(ii) *supra*, Dr. Chahil's testimony will be permitted subject to Plaintiff laying the proper foundation. Therefore, the Court will not grant summary judgment based on Defendant's argument that Plaintiff will not be able to present medical expert causation testimony.

## V.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Strike, **ECF No. [40]**, is **DENIED** as set forth in this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. [43]**, is **DENIED**.

3. Plaintiff's Motion to Strike, **ECF No. [46]**, is **GRANTED IN PART AND DENIED IN PART** as set forth in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 3, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record